UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION
Criminal No. 2:15cr151

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) |
| RONALD MILTIER | ) |
| | ) |
| Defendant. | ) |
| | ) |

**RONALD MILTIER'S BRIEF IN SUPPORT OF HIS MOTION FOR A VARIANCE SENTENCE**

Defendant Ronald Miltier, by counsel, in support of his Motion for a Variance Sentence, respectfully shows the Court as follows.

**PRELIMINARY STATEMENT**

Mr. Miltier will be presenting an objection to the advisory guideline range set forth in the PSR at sentencing, and in his position on sentencing filed seven days before sentencing, as prescribed in the Court's Sentencing Procedures Order. He objects to the enhancement under § 2G2.2(b)(3)(F) of +2 for distribution. Regardless of the Court's adjudication of that objection, a downward variance sentence is warranted because § 2G2.2 is fundamentally flawed in its application to Mr. Miltier on the facts of this case.

**STATEMENT OF THE CASE**

Mr. Miltier was convicted at trial of seven counts of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2) and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5). The PSR recommends an advisory sentencing range of 210-262 months based on an offense level of 37 and criminal history category of I (zero criminal history points). Sentencing is set for October 24, 2016, at 10:00 A.M.

**ARGUMENT**

I.  **Legal Standard**

The Court's Sentencing Procedures Order requires the filing of motions for a downward departure fourteen days before sentencing. Post-United States v. Booker, 543 U.S. 220 (2005), variances and departures are interchangeable terms for a sentence outside the advisory guideline range under the United States Sentencing Commission Sentencing Guidelines. United States v. Diosdado-Star, 630 F.3d 359, 364-65 (4th Cir. 2011) (citing Gall v. United States, 552 U.S. 38, 49-50 (2007); Rita v. United States, 551 U.S. 338, 350-351 (2007)). Furthermore, the Supreme Court's "post-Booker decisions make clear that a district court may in appropriate cases impose a non-Guidelines sentence based on a disagreement with the Commission's views." Pepper v. United States, 131 S. Ct. 1229, 1247 (2011).[1]

As the Fourth Circuit explained in Diosdado-Star:

> In fashioning an appropriate sentence, the Rita Court noted that the district court "may hear arguments by prosecution or defense that the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply," or "perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations" or "because the case warrants a different sentence regardless." Id. at 351 []; see also id. at 350 [] ("The sentencing courts, applying the Guidelines in individual cases may depart (*either* pursuant to the Guidelines *or*, since Booker, by imposing a non-Guidelines sentence)." (emphasis added)). Thus, Rita recognized that a sentencing court has

---

[1] There is no distinction between Commission or Congressional policy when it comes to this authority post-Booker. See Melissa Hamilton, Sentencing Adjudication: Lessons From Child Pornography Policy Nullification, 30 Ga. St. U. L. Rev. 375, 439-440 (2014) (quoting Brief for the United States at 9, Vazquez v. United States, 558 U.S. 1144 (2010) (No. 09-5370), 2009 WL 5423020; Brief for the United States at 43-44, Peugh v. United States, 133 S. Ct. 2072 (2013) (No. 12-62), 2013 WL 315237; citing U.S. SENTENCING COMM'N, REPORT ON THE CONTINUING IMPACT OF UNITED STATES V. BOOKER ON FEDERAL SENTENCING, pt. A, at 37-43 (2012) available at http://www.ussc.gov/Legislative_and_Public _Affairs/Congressional_Testimony_and_Reports/Booker_Reports/2012_Booker/index.cfm).

2

> flexibility in fashioning a sentence outside of the Guidelines range, and ultimately requires only that a district court "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." Id. at 356 [].

Id., 630 F.3d at 364.

In imposing a non-Guidelines sentence, "[t]he district court must articulate the reasons for the sentence imposed, particularly explaining any departure or variance from the guideline range." United States v. Moreland, 437 F.3d 424, 432 (4th Cir. 2006) (citing 18 U.S.C. § 3553(c); United States v. Hughes, 401 F.3d 540, 546 & n. 5 (4th Cir. 2005)). Further, the reasons for "a variance sentence must be tied to the factors set forth in § 3553(a) and must be accompanied by findings of fact as necessary[, but t]he district court need not discuss each factor set forth in § 3553(a) 'in checklist fashion'; 'it is enough to calculate the range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less.'" Id. at 432-33 (citing United States v. Green, 436 F.3d 449, 455 (4th Cir. 2006); quoting United States v. Dean, 414 F.3d 725, 729 (7th Cir. 2005)).

## II. Section 2G2.2 Is Fundamentally Flawed In Its Application to Mr. Miltier Under the Statutory Sentencing Factors

### A. Section 2G2.2 Undermines The Statutory Sentencing Factors

Section 2G2.2 has been heavily criticized by judges and other stakeholders for its failure to differentiate between levels of culpability in non-production child pornography cases. "[T]he child pornography Guidelines are . . . not grounded in any scientific, statistical, or empirical method. The advice imparted in the Guidelines does not reflect the sort of empirical data, national experience, and independent expertise that characterize the Sentencing Commission's institutional role." United States v. Hahn, No. 8:10CR60, 2011 U.S. Dist. LEXIS 577, at *31-32 (D. Neb. Jan. 3, 2011). The criticism is shared by the United States Sentencing Commission.

3

In its report to Congress in 2013, based on a special coding project that analyzed child pornography convictions and sentences in FY 2010 and the first quarter of FY 2011, the Sentencing Commission highlighted the flaws in and recommended sweeping changes to Section 2G2.2. U.S. SENTENCING COMMISSION, FEDERAL CHILD PORNOGRAPHY OFFENSES (Dec. 2012) available at http://www.ussc.gov/research/reports-congress (hereafter USSC Report). The Commission noted that in-range guideline sentences in non-production child pornography offenses had been steadily decreasing over time, reflecting pervasive dissatisfaction among judges with the harshness of the guideline in light of the changing landscape of child pornography offenses. Id. at 7, 9-13. "The increasing number of sentences outside of the applicable guideline ranges reflects the belief of many stakeholders that the current guideline and statutory penalty levels are excessive or are not based on relevant factors in non-production cases." Id. at 213; see also id. at 327 (citing U.S. SENT'G COMM'N, RESULTS OF SURVEY OF UNITED STATES DISTRICT JUDGES: JANUARY 2010 THROUGH MARCH 2010, Questions 1 & 8 (June 2010)).

> There were only three crimes for which more than 41% of federal judges expressed the conviction that the Guidelines generally produce too harsh a sentence. For those three particular crimes, the dissatisfaction rate was surprisingly high and virtually identical: 70% for possession of crack cocaine, 70% for possession of child pornography, and 69% for receipt of child pornography.

Troy Stabenow, A Method for Careful Study: A Proposal for Reforming the Child Pornography Guidelines, 24 Fed. Sent. R. 108, at *3 (2011) (citing U.S. SENTENCING COMMISSION, RESULTS OF SURVEY OF UNITED STATES DISTRICT JUDGES JANUARY 2010 THROUGH MARCH 2010 (June 2010), available at http://www.ussc.gov/Research/Research_Projects/ Surveys/20100608_Judge_Survey.pdf).

Average sentences in non-production cases skyrocketed from 18 months in 1992 to 129

4

months in 2010. USSC Report at 126. In 2010, in-range sentences for non-production receipt, transportation, and distribution offenses was only 38.3%. Id. at 135. In the first quarter of FY 2011, the percentage had dropped further to 32.7%. Id. at 165.

The underlying flaw in Section 2G2.2 is its failure to differentiate between offense conduct, thereby resulting in significant sentencing disparities between defendants charged with possession versus receipt and among defendants charged with receipt. Id. at 215.

> Several provisions in the current sentencing guidelines for non-production offenses — in particular, the existing enhancements for the nature and volume of the images possessed, an offender's use of a computer, and distribution of images — originally were promulgated in an earlier technological era. Indeed, most of the enhancements, in their current or antecedent versions, were promulgated when offenders typically received and distributed child pornography in printed form using the United States mail. As a result, enhancements that were intended to apply to only certain offenders who committed aggravated child pornography offenses are now being applied routinely to most offenders.

Id. at 313. The analysis of the FY 2010 conviction data showed 97.4% of defendants in receipt cases received the pre-pubescent minor enhancement, 80.1% the sadism/masochism enhancement, 96.0% the computer enhancement, and 98.4% the number of images enhancement. Id. at 209, table 8-1. 69.6% received the maximum +5 enhancement for more than 600 images. Id. at 141. These percentages reflect the transformation of child pornography by the internet and peer-to-peer (P2P) software programs. P2P receipt was involved in 73.8% of all cases in FY 2010. Id. at 149. In 2002, it was involved in none. Id. at 155. Application of the (b)(3)(F) distribution enhancement is widely disparate: In FY 2010, 55.3% of defendants received no (b)(3) enhancement at all if only involved in impersonal distribution through a P2P open network. Id. at 151.

The charging practices of the Government bear substantial responsibility for the

sentencing disparities and rejection of the guideline. In FY 2010, 53.1% of 2G2.2 cases had possession as the count of conviction, yet 97.5% of all 2G2.2 cases involved offense conduct of knowing receipt; this disparity in charging practices leads to disparity in sentencing because of the increase from 18 to 22 in the base offense level for receipt. Id. at 146; see U.S.S.G. § 2G2.2(a) (establishing a base offense level of 18 for possession, 22 for receipt). The offense of receipt of child pornography was designed to punish traffickers for whom it was difficult to prove possession. Id. at 29. Geographic variations are thus more significant than distribution offense conduct, criminal history, criminal sexually dangerous behavior (i.e., contact offenses), and demographics to whether a defendant's sentencing exposure was limited through charging practices, plea agreements, Government-sponsored variances, or non-Government-sponsored variances. Id. at 237. In other words, it matters most what prosecutor is charging and what court is adjudicating. That is not the goal of sentencing guidelines.

The Sentencing Commission concluded that the guideline is outmoded and overly severe. Id. at 323. "[F]our of the of six sentencing enhancements in §2G2.2 — those relating to computer usage and the type and volume of images possessed by offenders, which together account for 13 offense levels — now apply to most offenders and, thus, fail to differentiate among offenders in terms of their culpability." Id. at iii. This indictment is shared by commentators and judges.

> These sentencing enhancements are almost always applicable because the Internet is now the primary vehicle for delivering or consuming pornography (legal and illegal) and the number and type of images received is frequently accidental; it is thus a poor indicator of culpability. Most obviously, this means of distribution facilitates the easy collection of a large number of images (triggering the enhancement for quantity). Moreover, because digital collections are generally built through trading images in Internet chat rooms, a defendant generally has very little control over the quantity of images he receives or the content of those

6

> images (triggering enhancements for depictions of sadistic sex acts and pictures of children under the age of twelve). The predominance of this illicit bartering also means that most defendants receive another enhancement for distributing images of child pornography.

United States v. Burns, No. 07 CR 556, 2009 U.S. Dist. LEXIS 100642, at *24 (N.D. Ill. Oct. 27, 2009); see also United States v. Stark, No. 8:10CR270, 2011 U.S. Dist. LEXIS 12500, at *21 (D. Neb. Feb. 8, 2011) ("In this court's experience, there is essentially no Internet child pornography offender who could end up with a Guidelines-recommended sentence that falls at or close to the low end of the statutory range."). This phenomenon runs afoul of the 18 U.S.C. § 3553 imperatives.

> [T]he enhancements in the child pornography guideline operate in a rather unique manner: in other guidelines, enhancements are generally independent of each other, whereas "here they are so intertwined that if one applies, the others almost invariably apply too and the result is an extremely high total offense level for most child pornography defendants." [quoting United States v. Cameron, No. 1:09-cr-00024-JAW, 2011 U.S. Dist. LEXIS 24878, at *8-9 (D. Me. Mar. 11, 2011)] The guideline's recommendation for many offenders, then, violates the parsimony clause of the statutory sentencing goals. [citing United States v. Beiermann, 599 F. Supp. 2d 1087, 1105 (N.D. Iowa 2009)]
> An opinion explains this violation further:
> Unlike sentencing enhancements for many other crimes, the Commission did not determine that child pornography defendants who are subject to typical child pornography enhancements, such as use of a computer, are more culpable, more dangerous, or in need of a longer prison sentence as a deterrent than those defendants who commit the same offense without those same enhancements. Therefore, the Guidelines range in the typical child pornography case fails to achieve the § 3553(a) objectives.
> [quoting United States v. Munoz, Criminal No. 11-167 (JRT/AJB), 2012 U.S. Dist. LEXIS 155050, at *11 (D. Minn. Oct. 30, 2012)]

Hamilton, Sentencing Adjudication: Lessons From Child Pornography Policy Nullification, 30 Ga. St. U. L. Rev. at 401-02.

Furthermore, the offense conduct that results in the +13 offense level enhancement has no

correlation with degree of culpability or potential recidivism. Following a survey of nine research studies that had been performed on the subject, Troy Stabenow summarized the findings.

> [C]hild pornography consumption on its own does not appear to correlate to a significant risk that an offender will progress to a contact offense or recidivate generally postconviction. Overall recidivism rates are very low across all demographics for these offenses, although offenders with prior criminal histories are more likely to recidivate, as are those with concurrent violent offenses (including contact sexual offenses) to their child pornography crimes. Overall, child pornography offenders appear to be far more compliant with supervision than other offender populations, and recidivism rates for offenders on supervision or in treatment are particularly low.
> Primary risk factors for recidivism appear to include substance abuse issues, criminal history, instability factors (lack of employment, lack of a community support structure, etc.), using non-Internet child pornography, involvement with minors online, and cognitive disorders and distortions of certain types. Neither prolonged collecting nor organized collecting have been found, or even suggested, to be statistically significant by any empirical studies[.]

Stabenow, 24 Fed. Sent. R. 108, at *29 (citing Seto & Williams, <u>Examining the Criminal History and Future Offending of Child Pornography Offenders: An Extended Prospective Follow-up Study</u>, 35 LAW & HUM. BEHAV. 466 (Dec 2011)). In fact, "both government officials and recidivism scientists now believe that non-Internet access of child pornography is a greater indicator of culpability and danger." <u>Id.</u> (citing Report of the U.S. Probation Office, <u>United States v. C.R.</u>, F. Supp. 2d [E.D.N.Y], at docketed document 99, p. 6).

The analysis of the Sentencing Commission, judges, and commentators undermine convincingly the Section 2G2.2 regime. The advisory guideline range derived from that section in this case violates the requirements of 18 U.S.C. § 3353 and should be disregarded. An appropriate sentencing range may be derived from subtracting the 13 offense levels so criticized

by the Sentencing Commission, judges, and commentators that were applied to Mr. Miltier. An appropriate offense level is 24, and an appropriate guideline range is 60-63 months.

> B. Mr. Miltier's Characteristics And The Characteristics Of The Offense Warrant A Variance Of A 13-Level Reduction To The Offense Level

Mr. Miltier has been convicted of the prototypical non-production child pornography offense. The offense conduct found at trial involved an open P2P file-sharing program,[2] use of a computer and a P2P program, more than 600 images due to the possession of videos that are counted as 75 images each, images of prepubescent children, and a video depicting sadism or masochism. The +13 enhancement to the offense level that results fails to capture the level of culpability necessary to provide the Court with a recommendation for a sentence that is sufficient but not greater than necessary under 18 U.S.C. § 3553.

This offense conduct had no effect on any "market" for child pornography. There was no evidence of trading of images. There was no evidence of any involvement in any child pornography community. Rather, the evidence showed the conduct consisted of anonymous internet searches and subsequent downloading of images from anonymous sources. It is intuitively clear that this activity did not diminish the supply of these electronic images for other users. Similarly, there is no evidence or inference that this activity led to the creation of more images. In short, there was no market effect from the offense conduct.

Mr. Miltier has all the indicators of a very low risk of recidivism.[3] He has demonstrated stable employment, a loving and stable marital relationship, and deep involvement in his church.

---

[2] The Sentencing Commission distinguishes between "'personal' modes of distribution associated with 'community' involvement (e.g., emailing images to other offenders or trading images in 'closed' P2P file-sharing programs) [from] 'open' P2P file-sharing programs involving impersonal and indiscriminate distribution to strangers." USSC Report at xx.

[3] Mr. Miltier will present evidence with his Position on Sentencing on the issues presented in this section of the brief.

9

He has been a loving stepfather to the children of his wife from a prior marriage and has been a surrogate father to his granddaughter, whom he has raised. There is no evidence of use of non-Internet pornography or involvement with minors online. He has no criminal history.

Mr. Miltier is 55 years old and has lived in Portsmouth for all of his life but for a few years in Hertford, North Carolina, and a brief time in Texas. He graduated from I.C. Norcom High School and the Norfolk Naval Shipyard apprenticeship program. He was raised by his parents, Rosser and Virginia Miltier, with whom he is still close. Mr. Miltier and his wife, Lori, live in the same neighborhood in which he grew up and his parents still live.

Mr. Miltier and Mrs. Miltier met in 1994 and have been soul mates ever since. When they met, Lori's two children, Shawna and Jeremy, were in grade school. Mr. Miltier has been a second father to them thereafter. He has been a nurturing resource to them and continues to be. Mr. and Mrs. Miltier adopted their granddaughter, Makayla, in 2005 when Makayla was two years old, and they have raised Makayla since. Mr. Miltier is the only father Makayla has ever known. The two are extraordinarily close. Mr. Miltier's conviction has been devastating to the entire family but to no one more than Makayla.

The relationships Mr. Miltier has with his stepchildren and granddaughter, and the evidence from Mr. Miltier's mother, Virginia, and sister, Deborah, put paid to the self-serving and scurrilous allegation of Mr. Miltier's abusive and mentally unstable ex-wife. Mr. Miltier has never engaged in any contact sexual offense. The court-ordered psychological assessments of Mr. Miltier and Makayla confirmed the absence of any improper conduct by Mr. Miltier with her.

Mr. Miltier has been a productive member of this community his entire adult life. He has worked for many years with the Hampton Roads Sanitation District and Norfolk Naval Shipyard.

He held a security clearance for his work at he Shipyard, and was a skilled and valued employee, chosen, among other things, to perform the most complicated tasks and to deploy to Japan to perform work on the USS George Washington. He is active in his church, volunteering with community projects and outreach to members of the community in need.

Mr. Miltier's convictions come with severe collateral consequences, separate and apart from incarceration. He will never regain his employment at the Shipyard, as the felony convictions will almost certainly prohibit him from regaining a security clearance. His status as a sex offender will close other doors to him, not only in employment but also in his community – through his church, with his acquaintances, in his neighborhood.

This Court has varied downward from the Section 2G2.2 guideline range in non-production cases on several occasions. See, e.g., United States v. Midgett, No. 2:15cr114, 2016 WL 542141 (E.D.Va. Feb. 9, 2016); United States v. Morgan, No. 4:15cr17, 2015 WL 9239574 (E.D.Va. Dec. 16, 2015). Under the facts and circumstances of this case, it should do so again. A guideline sentence is unjust and greater than necessary under the facts and circumstances of this case.

## CONCLUSION

For the reasons stated, the Court should deviate downward significantly in arriving at an appropriate sentence in this case. The Court should sentence Mr. Miltier to a sentence of between 60 and 63 months and a term of supervised release of five years.

This the 10th day of October, 2016.

**RONALD MILTIER**

_____/s/_____

James R. Theuer (VSB #68712)
JAMES R. THEUER, PLLC
555 E. Main St., Suite 1212
Norfolk, VA 23510
Tel: (757) 446-8047
Fax: (757) 446-8048
jim@theuerlaw.com
Attorney for Defendant Ronald Miltier

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of October, 2016, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to:

>Joseph L. Kosky, Esq.
>Ass't U.S. Attorney
>8000 World Trade Center
>101 W. Main St.
>Norfolk, VA 23510
>joseph.kosky@usdoj.gov

and with a copy by email and mail to the following non-ECF user:

>Leah D. Greathouse
>U.S. Probation Officer
>600 Granby St.
>Norfolk, VA 23510
>Leah_Greathouse@vaep.uscourts.gov

/s/
James R. Theuer (VSB #68712)
Attorney for Defendant Ronald Miltier
JAMES R. THEUER, PLLC
555 E. Main St., Suite 1212
Norfolk, VA 23510
Tel: (757) 446-8047
Fax: (757) 446-8048
jim@theuerlaw.com