IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:15cr151 |
| | ) | |
| RONALD MILTIER, | ) | |
| | ) | |
| *Defendant*. | ) | |

**GOVERNMENT'S POSITION WITH RESPECT TO
SENTENCING FACTORS IN THE PRESENTENCE REPORT**

COMES NOW the United States of America, by undersigned counsel, and in accordance with Section 6A1.2 of the Sentencing Guidelines and Policy Statements and this Court's policy regarding guidelines sentencing, the government hereby represents that it has reviewed the presentence report (PSR) prepared by the United States Probation Officer. After reviewing the Presentence Investigation Report and applying the factors of Title 18, United States Code, Section 3553(a) to this case, the government's position is that a guideline sentence of 210-262 months of imprisonment is appropriate.

**I.      The United States Has No Objection to the PSR**

The United States hereby represents that it has no objections to the facts, the findings or to the calculations of the presentence report. The United States reserves the right to call witnesses and introduce other evidence to support the enhancements enumerated in the PSR. In addition, the United States intends to present testimony and documentary evidence that the defendant physically abused his ex-wife and sexually abused his biological daughter some twenty years ago. The United States has also forwarded to the Court documents from one of the victims in this case.

Should any additional victim impact statements be received, the government will introduce them at the sentencing hearing.

II.     **Restitution Request**

As of October 12, 2016, the government has received one restitution request from the victim "Vicky" in the amount of $10,000. This request, along with supporting documentation and evidence, was provided to the Probation Officer and the defendant the date it was received. The United States contends that the request is reasonable and supported by sufficient evidence to demonstrate both harm and loss suffered by "Vicky" through the actions of the defendant and others like him. As such, the United States will seek a restitution award in the amount of $10,000. The government has no objection to bifurcating the sentencing proceedings and taking up the issue of restitution at a later date.

III.    **Defendant's Objection to Section 2G2.2(b)(3)(F) – Distribution**

The defendant objects to receiving a two level enhancement for distribution as described is Section 2G2.2(b)(3)(F) of the Sentencing Guidelines. The defendant was operating the peer to peer file sharing program known as Ares and using it to download child pornography across the internet. While operating this program, undercover FBI task force officers utilized the defendant's computer to download images and videos of child pornography. The defendant's distribution of child pornography over the Ares network fits the catchall provision of Section 2G2.2(b)(3) as he was not distributing for pecuniary gain (subsection (3)(A)), expectation of receipt of a thing of value (subsection (3)(B)), or to a minor for any purpose (subsections (3)(C), (D), and (E)). Rather, he was knowingly using the program to download and share child pornography with other users, conduct the Fourth Circuit has found sufficient to trigger the application of Section 2G2.2(b)(3)(F). *See United States v. Layton*, 564 F.3d 330, 335 (4th Cir. 2009); ("use of a peer-to-peer file-sharing program constitutes 'distribution' for the purposes of

U.S.S.G. § 2G2.2(b)(3)(F). When knowingly using a file-sharing program that allows others to access child pornography files, a defendant commits an act 'related to the transfer of material involving the sexual exploitation of a minor.'"); *United States v. Brunner*, 393 F. App'x 76, 77 (4th Cir. 2010) ("where…a defendant knowingly uses a peer-to-peer file-sharing program that allows others to access child pornography files, that action warrants an enhancement pursuant to USSG § 2G2.2(b)(3)(F)"); *United States v. Clifton*, 587 F. App'x 49, 54 (4th Cir. 2014) ("[w]e have recognized that the 'use of a peer-to-peer file-sharing program constitutes 'distribution'' as defined by the Sentencing Guidelines in the context of child pornography."). As such, the defendant's objection is without merit and should be overruled.

IV. **A Sentence of 210-262 Months of Incarceration Complies with the Factors and Considerations Set Forth in 18 U.S.C. § 3553(a) and (b).**

In *United States v. Booker*, 543 U.S. 220, 264 (2005), the Supreme Court made clear that sentencing courts should "consult [the Sentencing] Guidelines and take them into account when sentencing." *See also United States v. Biheiri*, 356 F.Supp.2d 589, 593 (2005) ("Justice Breyer's majority opinion in [*Booker*] sensibly teaches that the Sentencing Guidelines must still be taken into account pursuant to 18 U.S.C. § 3553(a) in fashioning an appropriate sentence."). The Supreme Court provided this direction to promote the sentencing goals of Congress, namely to "'provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities[.]'" *Booker,* 543 U.S. at 264 (*quoting* 28 U.S.C. § 991(b)(1)(B)). The Fourth Circuit has provided the following guidance in the wake of *Booker*:

> A district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence.

*United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Thus, sentencing courts must consider the factors outlined in 18 U.S.C. § 3553(a).

3

Section 3553(a) requires a sentencing court to consider the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. Applying these sentencing factors to the facts of this case demonstrates that a sentence of 210-262 months of incarceration is appropriate and reasonable.

A.  **Nature and Circumstances of the Offense**

This case arose out of an investigation when agents of the Federal Bureau of Investigation (FBI) downloaded child pornography from a computer located at the defendant's residence using the ARES peer to peer software program on two separate occasions in late 2013. Based upon these downloads, a federal search warrant was obtained and executed on the defendant's residence in Portsmouth, Virginia, in May 2014. During the course of the search, a number of electronic devices were located and seized. A forensic analysis of these devices discovered eleven child pornography videos, and 30 child pornography still images on a notebook computer and thumb drive associated with the defendant. In addition, forensic analysis was able to recover search terms and file names of remnant files that had been deleted and overwritten on these devices. These search terms file names suggested the defendant was routinely searching for, downloading, and then deleting child pornography files.

The nature of the charges, receipt and possession of child pornography, to which the defendant has been convicted, in and of itself calls for a substantial term of imprisonment. These are not victimless crimes. The victims are and continue to be the children depicted in the images. The "use of children as subjects of pornographic materials is harmful to the

physiological, emotional, and mental health of the child" used in the production of the pornographic material. *Osborne v. Ohio*, 495 U.S. 103, 109 (1990). Furthermore, collecting child pornography images feeds a market that preys upon other children by creating a demand for more of the images. *Osborne v. Ohio*, 495 U.S. 103, 109-11 (1990).

Recent research published in the Journal of Sexual Aggression discussed in detail the dangerousness and risk associated with those that collect child pornography.

> Crimes involving the possession, distribution, or manufacture of child pornography constitute violations of specific laws pertaining to the receipt and transmission of child abuse/exploitation images, and as a result there is a tendency for some individuals to assume these offenders are somehow distinct from child molesters (i.e., "hands-on" abusers). This assumption, in fact, is a key reason why recent years have seen an increase in judicial sentences that fall below sentencing guidelines (United States Sentencing Commission, 2012), a trend that may be attributable to an impression that the rate of "crossover" between child pornography collection and hands-on abuse is low (Eke & Seto, 2011; Endrass *et al.*, 2009; Seto, Hanson, & Babchishin, 2011).
>
> The logic of this conceptual view is somewhat befuddling. It ignores the observation that individuals who molest children and those who download and masturbate to child pornographic images share a primary motivational pathway - both are sexually aroused by minors (Seto et al., 2006). It therefore should come as no surprise that offenders whose sexual fantasies and urges involve children are able to derive pleasure and gratify their deviant impulses through a variety of means, and it suggests that significant "crossover" may exist between these crimes.
>
> Although some research (Elliott, Beech, Mandeville-Norden, & Hayes, 2009; Howitt & Sheldon, 2007; Webb, Craissati, & Keen, 2007) has shown differences between groups of "online" and "offline" offenders, most is limited by an important assumption; that is, an individual is a hands-off offender simply because official records do not reflect contact sexual offending. This assumption appears unwise, given the base rates for detecting sexual abuse are extraordinarily low, the finding that most victims of abuse never report their victimization to law enforcement, and the low percentage of arrests leading to convictions (Centres for Disease Control and Prevention, 2010; National Centre for Policy Analysis, 1999; US Department of Justice, 2010, 2012). Researchers should never assume an offender has not committed a hands-on crime merely because his or her criminal record does not reflect such a charge or conviction.
>
> In an interesting study by Buschman et al. (2010), which unfortunately has a small sample size, data were collected from Dutch offenders who had downloaded

child pornography. The researchers were able to ensure that disclosures would not be used against the offenders in court-immunity that obviously facilitated more complete honesty. Self-report and post-polygraph confessions were compared, and researchers found that while the majority of participants (21 of 25) initially denied any high-risk behaviours towards children in their self-report, following polygraph examination many offenders admitted they had engaged in such acts, and five participants acknowledged they had a plan to sexually abuse children if the opportunity arose.[1]

As an additional indicator of the dangerousness of these offenders, there is the very real effect that consumers, like the defendant, have had on the producers of child pornography. "[I]n recent years there has been an increase in the frequency with which particularly violent images and images of younger children are found in offender collections."[2] The defendant was no exception, as he downloaded images that included bondage and prepubescent children.

This trend towards violence is driven by consumers like this defendant. This is reflected in the prevalence of the 2G2.2(b)(4) violence and sadism Special Offense Characteristic (SOC) appearing in a high number of cases. However, the prevalence of that SOC should not be met with "It appears so frequently, I should ignore it." Indeed, quite the opposite response should occur. As has been said by another district court, "There can be no keener revelation of a society's soul than the way in which it treats its children… Given the recent statistics surrounding child pornography, we are living in a country that is losing its soul." *United States v. Cunningham*, 680 F.Supp.2d 844, 847 (N.D. Ohio, 2010).

The United States does not ask the Court to use the Bourke study, or any of the studies discussed, as proof of uncharged crimes. However, the United States asks the Court to find that these studies highlight the seriousness of the offense. These studies support the Guidelines, and

---

[1] M.L. Bourke, et. al., "The use of tactical polygraph with sex offenders," *Journal of Sexual Aggression* (2014), p. 5-6.

[2] United States Sentencing Commission "Report to Congress: Federal Child Pornography Offenses," (2012), Ch. 4, p. 85. Available online at: http://www.ussc.gov/news/ congressional- testimony-and-reports/sex-offense-topics/report-congress-federal-child-pornography-offenses

indicate a lengthy and substantial sentence for the defendant is appropriate given the dangerousness of the offense.

  **B.  Characteristics and History of the Defendant**

  The defendant has no relevant criminal history. However, as this Court knows, this is not unusual in child pornography cases and should not be given much weight in the Court's determination of a sentence. However, there is troubling evidence that the defendant has a history of committing hands on contact sex offenses and physical abuse of his family members. The government intend to introduce evidence at the sentencing hearing that the defendant was suspected of and investigated for sexual child abuse of his biological daughter when she was approximately the age of two. In addition, the defendant's ex-wife will testify that the defendant physically abused her during the course of their tumultuous marriage. This evidence demonstrates the dangerousness of the defendant and the need to impose a lengthy sentence of incarceration.

  In addition, the defendant has failed to accept responsibility for his conduct in this matter. As everyone knows, the first step to recovery is admitting that a problem exists. This defendant however, remains indignant and maintains that someone else must be responsible for the child pornography on his computer despite the overwhelming evidence to the contrary. He utterly fails to acknowledge his problem and therefore is unlikely to be amenable to treatment or rehabilitation. In fact, this defendant was so indignant that he demanded his pretrial release conditions be changed so he would not be required to participate in sex offender treatment. *See* ECF No. 20. This defendant has failed to accept responsibility for his misconduct and variance sentences should be reserved for those defendants able to admit their problem. Because this defendant refuses to admit to his criminal behavior, he should not receive a below guidelines sentence.

### C.     Need to Deter Future Criminal Conduct and to Protect the Public

The defendant's sentence needs to accomplish the twin goals of deterring the defendant from engaging in future criminal conduct and to protect the public. The government avers that, if given the opportunity, the likelihood that the defendant will return to this predatory behavior in the future is possible due to his obvious sexual attraction to minors and the evidence of sexual abuse perpetrated against his own biological daughter. Further, the risk that these offenders pose to society, as discussed *infra*, support a significant sentence of imprisonment.

### D.     Need to Provide Treatment to the Defendant

Due to the nature of the defendant's crimes, the defendant should be ordered to participate in a sex offender treatment program while incarcerated.

### E.     Need to Avoid Unwarranted Sentencing Disparities

The defendant's crimes, history and characteristics, along with his actions related to the crimes of conviction, all support a significant sentence of imprisonment. As such, the need to avoid unwarranted sentence disparities clearly weighs in favor of a within Guidelines sentence. 18 U.S.C. § 3553(a)(6).

### F.     Other Relevant Factors

The defendant raises several concerns about the current state of the Guidelines dealing with child pornography. Admittedly, there are issues with the child pornography Guidelines, as discussed in the February 2013 Report to Congress by the United States Sentencing Commission. *See* U.S. Sentencing Commission: Federal Child Pornography Offenses (2013). However, the Sentencing Commission's report came out February 27, 2013 (the Report), and now three years later, Congress has still yet to act in changing the Guidelines. Thus, the Guidelines are still the correct place to start in determining an appropriate sentence for the defendant.

That being said, the government agrees with a number of the Sentencing Commission's conclusions. For instance, the commission agrees that non-production child pornography offenses are serious crimes (even without further evidence of hands-on crimes). The Report also states that these are not "victimless" crimes, with which the government whole-heartedly agrees.

The government also agrees that the state of technology and the changes in child pornography "market" has changed child pornography crimes so much that it is not adequately represented by the existing Guidelines. Specifically, the government believes that the existing Specific Offender Characteristics (SOCs) in the Guidelines may not accurately reflect the seriousness of the offender's conduct nor the various degrees of offender dangerousness.

It is important to note that, regardless of the problems with U.S.S.G. § 2G2.2, the Court should take into account the purpose of the 2003 Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act ("PROTECT Act"), requiring mandatory minimum sentences of 60 months for distribution or receipt offenses. The PROTECT Act was, in part, in response to the trend in district courts to downwardly depart and the general inadequacy of sentences in child pornography cases. *See* H.R. Rep. No. 108-66, 108th Cong., 2nd Sess. 58-59 (2003). The threat posed to children by child pornography trafficking has only increased since passage of the PROTECT Act, as offenders now trade larger quantities of child pornography showing in more frequency images of more explicit conduct and violence conduct toward younger children.

In a March 5, 2013, letter to the United States Sentencing Commission, the Department of Justice (DOJ) recommends revising/maintaining U.S.S.G. § 2G2.2 with respect to the following SOCs:

- Communication/Group Membership: This new SOC would increase the offense level for defendants who communicated or associated with others concerning the sexual abuse or exploitation of a minor. Membership in a group is closely correlated with particularly dangerous, prolific and sophisticated child pornography offenders. Informal communication and participation in these groups validates, normalizes and encourages sexual abuse of minors by other individuals.

- Duration of Conduct: This new SOC would increase punishment for offenders who engaged in repeated and long-term child pornography collecting or trafficking.

- Offender Sophistication: This new SOC would enhance the Guideline range for offenders who used, or advised others, regarding the use of technologies or procedures to evade detection by law enforcement (such as encryption and anonymization). These techniques are frequently used by the most dedicated, sophisticated and dangerous child pornography offenders.

- Pattern of Activity: The current SOC (U.S.S.G. § 2G2.2(b)(5)) should be modified to include conduct that involved only one instance of sexual abuse or sexual exploitation.

- Use of a Computer: The current SOC should be eliminated and replaced with other suggested SOCs.

- Distribution: The SOC should continue to augment the guideline for defendants who distributed images, particularly to a minor (and particularly to a minor in an effort to encourage that minor to engage in sexually explicit conduct).

- Image Severity: This SOC should continue to increase the guideline for material that portrays sadistic and masochistic conduct, and should also inversely correlate punishment severity with the age of the victim depicted (e.g. for images of infants, babies or toddlers).

- Image Quantity: This SOC should continue to tie the guideline range to the quantity of child pornography an offender collects, but the numeric thresholds should be substantially increased for each offense level so as to better distinguish between occasional and habitual collectors.

Applying these suggested factors to the defendant's case would likely result in a similar guideline range as most of these suggested factors would apply to the defendant's case. For instance, the defendant engaged in downloading child pornography dating back at least three years. *See* Gov't's Ex. 27, p. 97 (Search Term "doing a child" dated 8/31/11), the defendant's

10

pattern of child pornography was sophisticated in that he routinely deleted the child pornography in an effort to evade detection, the defendant distributed child pornography through the use of the Ares program, the defendant had extreme images including prepubescent children and bondage. It is also important to note that the defendant actively sought out images of bondage and violence. *See* Gov't's Ex. 23 (Ares Search Term "raped"). Thus, the Court can reasonably conclude that under virtually any guidelines regime, this defendant would likely receive significant guideline enhancements and a significant guideline range.

Again, Congress has not changed the Guidelines yet, so their proper calculation is appropriate in a defendant's sentencing. However, even taking into account DOJ's suggested changes, defendant deserves a severe sentence of imprisonment well above the mandatory minimum.

Section 3553(a) also addresses other the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, to afford adequate deterrence to criminal conduct, and to prevent unwarranted sentencing disparities. Here, a guideline sentence would adequately address all of these concerns. The penalties for violating these statutes, including the imposition of mandatory minimum prison sentences, reflects Congress' desire to protect the most vulnerable members of society. The Sentencing Guidelines, through the appropriate enhancements, ensure that the more egregious aspects of this crime are adequately addressed and help to promote equity in sentencing.

V.  **Conclusion**

For these reasons, as well as additional reasons to be more fully articulated during the sentencing hearing on this matter, the United States respectfully requests that the Court sentence the defendant to guideline sentence of confinement.

                    DANA J. BOENTE
                    UNITED STATES ATTORNEY

By        /s/
        Joseph L. Kosky
        Assistant United States Attorney
        Attorney for the United States
        United States Attorney's Office
        101 West Main Street, Suite 8000
        Norfolk, Virginia 23510
        Office Number (757) 441-6331
        Facsimile Number (757) 441-6689
        E-Mail Address - joseph.kosky@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of October, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

James R. Theuer, Esquire
James R. Theuer, PLLC
555 East Main Street, Suite 801
Norfolk, VA 23510
jim@theuerlaw.com

I hereby certify that on the 17th day of October, 2016, a true copy of the foregoing government's response was sent via electronic mail copy to:

Leah D. Greathouse
United States Probation Office
600 Granby Street
Norfolk, Virginia 23510

                                                /s/
                                         Joseph L. Kosky
                                         Assistant United States Attorney
                                         Attorney for the United States
                                         United States Attorney's Office
                                         101 West Main Street, Suite 8000
                                         Norfolk, Virginia 23510
                                         Office Number (757) 441-6331
                                         Facsimile Number (757) 441-6689
                                         E-Mail Address - joseph.kosky@usdoj.gov