UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION
Criminal No. 2:15cr151

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) |
| RONALD MILTIER | ) |
| | ) |
| Defendant. | ) |
| | ) |

### RONALD MILTIER'S POSITION ON SENTENCING

Defendant Ronald Miltier, by counsel, pursuant to the Court's Sentencing Procedures Order, presents the following as his Position on Sentencing. Mr. Miltier has previously moved for a variance sentence, docket entries nos. 56 and 57, and that Motion is pending before the Court.

### UNRESOLVED OBJECTION TO THE PSR

Mr. Miltier objects to the enhancement under § 2G2.2(b)(3)(F) of +2 for distribution. There was no knowing distribution of child pornography off of the Acer laptop necessary to support the enhancement.[1]

---

[1] Mr. Miltier has also advanced a number of objections to paragraphs of the PSR that do not affect the advisory guideline range, specifically paragraphs 42, 47, and 48. See Objs to PSR Add., docket entry no. 54, 54-1, and 54-2. Mr. Miltier requests that the Court make appropriate findings of fact on the objections to paragraphs 47 and 48 based on the Declarations of Deborah Redmon and Virginia Miltier, docket entry 54-1, and the statements and photos attached to this Position on Sentencing, the originals of which Mr. Miltier will present at sentencing. Mr. Miltier is prepared to present testimony at sentencing consistent with the declarations, statements, and photos.

Mr. Miltier likewise objects to the Second Addendum to the PSR filed on October 13, 2016, docket entry no. 58, adding a restitution demand. Mr. Miltier has not had adequate time to present his argument to the demand and requests, if the Government intends to pursue restitution, to a separate hearing on the issue.

**STATEMENT OF THE CASE**

Mr. Miltier was convicted at trial of seven counts of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2) and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5). The PSR recommends an advisory sentencing range of 210-262 months based on an offense level of 37 and criminal history category of I (zero criminal history points). Sentencing is set for October 24, 2016, at 10:00 A.M.

**ARGUMENT**

**I.    Objection to the § 2G2.2(b)(3)(F) Enhancement**

The Government must prove the applicability of a sentencing enhancement by a preponderance of the evidence. United States v. Steffen, 741 F.3d 411, 413 (4th Cir. 2013). "Adopting the PSR does not satisfy the requirements of Rule 32(i)(3)(B), however, if the factual recitations in the PSR do not support the PSR's recommendation." United States v. Flores-Alvarado, 779 F.3d 250, 256 (2015) (4th Cir. 2015) (citing United States v. Chandia, 514 F.3d 365, 376 (4th Cir. 2008) (remanding for resentencing where district court adopted PSR's recommended enhancement but PSR "did not contain any factual assertions" to support application of the enhancement); United States v. Bolden, 325 F.3d 471, 498 (4th Cir. 2003) (remanding for recalculation of loss amount where district court adopted PSR but PSR "fail[ed] to support" a necessary factual finding); United States v. Robinson, 744 F.3d 293, 300 n.5 (4th Cir.), cert. den., 135 S. Ct. 225 (2014) (explaining that "a probation officer's calculation in a PSR standing alone (that is, without the identification of supporting evidence of any kind) does not constitute a finding of fact on which a sentencing court can rely") (internal quotation marks omitted)).

---

Finally, Mr. Miltier requests that the Court correct the number of dependents listed in the PSR, p. 2, from one to two.

2

The evidence at trial was clear that the P2P file sharing program on the Acer laptop was installed in default mode, i.e., the user did not affirmatively enable sharing of files, rather, the default mode permitted sharing of files without any affirmative action by the user. Testimony of R. Jones. There was no evidence that the user knowingly used the program to distribute. That is a crucial distinction.

Courts that have analyzed the issue have largely, though not unanimously, held that the evidence must show that the defendant knowingly distributed, not merely that the defendant knowingly use a P2P program to download files. In United States v. Robinson, 714 F.3d 466 (7th Cir. 2013), the Seventh Circuit vacated a judgment that was based in part on the Section 2G2.2(b)(3)(F) enhancement. The defendant admitted downloading files but denied he knew the files could be viewed by other users of the program. Id. at 468. The Seventh Circuit held that "the sentencing judge must find that the defendant either knew, or he was reckless in failing to discover, that the files he was downloading could be viewed online by other people." Id. (citing United States v. Durham, 618 F.3d 921, 926-27 (8th Cir. 2010); distinguishing United States v. Ray, 704 F.3d 1307, 1311-12 (10th Cir. 2013)). The Court noted that "strict liability is disfavored in the criminal context." Id.[2] Because the factual record failed to show that the defendant knew he was distributing files through the P2P programs, the enhancement was not applicable. Id. at 470.

The opinion in Robinson is especially significant because the only, as far as counsel is aware, published opinion in the Fourth Circuit on this question of the application of Section

---

[2] Mr. Miltier objects to the application of the guideline to him in the absence of his knowledge that the conduct found at trial would make him a distributor. See Robinson, 714 F.3d at 469 (citing United States v. Ortiz-Graulau, 526 F.3d 16, 19 (1st Cir. 2008); United States v. Chavez-Diaz, 444 F.3d 1223, 1230 (10th Cir. 2006)) (noting presumption of knowledge of criminal law may not extend to advisory sentencing guidelines).

3

2G2.2(b)(3)(F) in the context of P2P programs is United States v. Layton, 564 F.3d 330 (4th Cir. 2009). In that opinion, the Fourth Circuit both expressly and implicitly relied on evidence that the defendant knew the P2P program permitted sharing of files.

> The Seventh Circuit upheld a distribution enhancement where a defendant downloaded child pornography through a file-sharing program, since defendant's choice to "*knowingly [make] his child pornography available for others to access and download*" fell within the plain meaning of "distribution." United States v. Carani, 492 F.3d 867, 875-76 (7th Cir. 2007). The Seventh Circuit found the passive nature of a file-sharing program "irrelevant." Id. at 876.
> Similarly, the Eighth Circuit upheld a distribution enhancement for a defendant who downloaded child pornography from a file-sharing program and *knew that others could download these files from his computer*. See United States v. Griffin, 482 F.3d 1008, 1010-12 (8th Cir. 2007). Likewise, the Eleventh Circuit affirmed an enhancement for distributing child pornography through a file-sharing program. See United States v. Mathenia, 409 F.3d 1289, 1290 (11th Cir. 2005).
> [. . . .]
> Layton told the FBI agents that as a member of WinMX, a file-sharing program, "he created a shared folder called 'My Music' with privileges that allowed other people to download files that he put into the folder." (J.A. 270).

Id. at 335 (emphasis added). Layton admitted he knowingly created a folder to permit distribution of files. Crucially, in Carani the Seventh Circuit was careful to note that "The district court specifically found that Carani made his child pornography videos available through Kazaa, and that he knew other users were downloading these files from him." Id., 492 F.3d at 876. Likewise in Griffin, the Eight Circuit noted that "Griffin admitted that he knew that by using Kazaa he would be able to download files from other Kazaa users and that other Kazaa users would be able to download files from him." Id., 482 F.3d at 1010.[3] The context of the Fourth Circuit's holding in Layton is predicated entirely on the *knowing* distribution of files

---

[3] Mathenia, a per curiam opinion, has no discussion of what the defendant knew or did not know, and the defendant was convicted of distribution of child pornography, not receipt. Id., 409 F.3d at 1290.

4

through a P2P program.

From the facts at issue in <u>Layton</u> and the cases it relied upon, the law in the Fourth Circuit requires knowing distribution, not merely use of a P2P program. The Government must prove that Mr. Miltier knew or was reckless in discovering that files on the Acer laptop could be viewed by other people. It has not done so. Accordingly, Mr. Miltier's objection to the Section 2G2.2(b)(3)(F) enhancement should be sustained and his offense level reduced to 35. The advisory guideline range is 168-210 months.

## II. <u>Application of the Statutory Sentencing Factors</u>

"[S]ufficient, but not greater than necessary" is the command of the Sentencing Reform Act, 18 U.S.C. § 3553. As the Court is well aware, the United States Sentencing Commission's Guidelines are advisory, not mandatory. <u>United States v. Booker</u>, 543 U.S. 220 (2005). While the Court should consider the guidelines and policy statements, the sentence ultimately imposed must not be based solely on the Guidelines; the Guidelines are just one of a number of factors to be considered. <u>Id.</u> at 259-60.

### A. Mr. Miltier's Characteristics

Mr. Miltier has discussed his history and characteristics in his Brief in Support of a Variance Sentence, docket entry no. 57. He is 55 years old, a machinist who has worked hard his entire life to support his family. The statements attached to this Position on Sentencing, and the trial testimony of Jenkins Jones and Lori Miltier, establish conclusively his dedication to family, church and community and his attributes of hard work, compassion, faith, and honor. Exh. A.

The poignant statements from his wife, Lori, and adopted daughter and granddaughter Makayla demonstrate the central role Mr. Miltier plays in the lives of his family. "He is the glue to this family," Makayla writes, and that sentiment is echoed throughout the statements of his

friends and family. Mr. Miltier has had a tremendous impact on the lives of his extended family, including most notably that of his step-daughter, Shauna, and step-son, Jeremy. He met them when they were both young, just teenagers, and raised them as his own children, according to them both. Jeremy says that Mr. Miltier taught him how to be selfless, kind and fair, and taught him how to work hard and be a father to his own children. Shauna describes him as "the most loving honest hard working man I have ever met." Mr. Miltier's nieces Kimberly, Ashley, and Kristina describe him as loving, caring, gentle, and family-oriented. Lori's ex-husband describes him as a "very hard working, honest, good religious man."

Mr. Miltier's friends speak with one voice to these same qualities. Of particular note is the length of the friendships documented in these statements. Brenda Harris and her husband have been friends of the Miltiers for more than thirteen years through church. She describes him as compassionate and genuine with a deep faith. Faye Giles, a friend of over fifteen years, knows him as loving, caring, and respectful. Laura Journigan speaks to his hard-working nature and service to others through his church, and his willingness to sacrifice to help others in need. His aid to Winona Dillon when her son was seriously ill demonstrates his commitment to others. Mr. Miltier's service above himself extended to his neighbors, as is attested to by the statements of his neighbors of more than seven years, Samuel and Lillian Taylor.

Another theme is recurrent throughout these statements: Mr. Miltier is not a predator. The PSR's repetition of the scurrilous and defamatory statements of Robin Aydlette are thoroughly refuted by the experience of those who have known Mr. Miltier. Makayla is forthright and adamant that Mr. Miltier has never touched her inappropriately. Ashley, twenty-six years old and his niece, says that she trusts him with her own daughters. Kimberly, sixteen years old and his niece, describes the wonderful memories she has staying with Mr. Miltier.

6

Kristina talks about years of sleeping at his house, how it was her favorite place to stay, and how he never did anything "to make me uncomfortable in any way." His step-children, Shauna and Jeremy, speak only of their affection for him. Faye Giles' grandchildren have spent time with him and she would do so again without "any doubts of fears." Winona Dillon left her daughter with the Miltiers while she cared for her ill son.

Against this evidence are the self-serving, vile ranting of a mentally unstable ex-wife who was convicted of beating her (and Mr. Miltier's) daughter, the same daughter she strategically accused Mr. Miltier of molesting in order to obtain an advantage in a child custody dispute. The photographs attached to this Position on Sentencing are telling. In March 2003, among other times, Aydlette voluntarily left Ronee Renee with the Miltier's while she vacationed. The photographs speak for themselves in terms of the relationship between Mr. Miltier and his daughter at that time. But they also demonstrate the falsehood of Aydlette's accusations, for to believe her calumnies, you would also have to believe that she voluntarily left her daughter with the same man she thought had sexually molested the child. Actions often speak the loudest, and Aydlette's actions prove her allegations to be what they are: spiteful and false. Mr. Miltier has never engaged in any act of molestation.

### B. The Offenses of Conviction

Mr. Miltier has addressed the offenses of conviction in his Brief in Support of a Variance Sentence, docket entry no. 57. The evidence at trial was that the Acer laptop computer contained one picture and eleven videos which may be considered child pornography. Govt. Exh. 22. The offenses are serious, but as argued is his Motion, the advisory guideline range exceeds the sentence that is sufficient but not greater than necessary in these circumstances. A downward variance is necessary to comport with the imperatives of 18 U.S.C. § 3553.

### C. The Need for the Sentence

Mr. Miltier's characteristics establish that he has a very low risk of recidivism. Troy Stabenow, A Method for Careful Study: A Proposal for Reforming the Child Pornography Guidelines, 24 Fed. Sent. R. 108, at *29 (2011) (citations omitted); see Brf in Spt Var. Sent., p. 8, docket entry no. 56. Mr. Miltier has no substance abuse issues, criminal history, history of unemployment or disengagement from the community, use of non-Internet child pornography, involvement with minors online, or cognitive disorders, all factors viewed as indicators of a likelihood to recidivate. Coupled with the supervised release term that will accompany his sentence, a long period of incarceration is not necessary to protect the public.

Mr. Miltier will be, and anyone in Mr. Miltier's place would be, more than adequately deterred from the conduct found at trial by incarceration for any period. These convictions and incarceration have lost him his job and the prospect of ever returning to that job because of its requirement for a security clearance, subjected him to life-long reporting as a sex offender, and shamed him in his church community and neighborhood. Whatever the duration of the sentence of incarceration, these effects are permanent, and the continuing obligation of supervised release and registration address any imperative to protect the public in the future. Furthermore, he has been wrested him from the bosom of his family, meaning that he shall miss the all the events of life: graduations, marriages, saying final goodbyes to ailing family. His family is experiencing not only emotional but also financial hardship from his absence. Mr. Miltier, now aged 55, and his family are facing a future of penury from the loss of his income now and likely forever if he is incarcerated for any duration approaching the advisory guideline range.

A sentence of any duration equal to or near the five-year minimum appropriately reflects the seriousness of the offense and metes out just punishment. Coupled with a term of supervised

release of five years, it would place Mr. Miltier in a custodial or supervisory status for ten years. A longer sentence is greater than necessary to promote respect for the law and should not be given.

## CONCLUSION

For the reasons stated above and in his Brief in Support of a Variance Sentence, the Court should vary downward significantly in arriving at an appropriate sentence in this case. The appropriate advisory guideline range is 168-210 months, but the Court should sentence Mr. Miltier to a sentence of between 60 and 63 months and a term of supervised release of five years.

This the 17th day of October, 2016.

**RONALD MILTIER**

_____/s/_____

James R. Theuer (VSB #68712)
JAMES R. THEUER, PLLC
555 E. Main St., Suite 1212
Norfolk, VA  23510
Tel: (757) 446-8047
Fax: (757) 446-8048
jim@theuerlaw.com
Attorney for Defendant Ronald Miltier

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of October, 2016, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to:

> Joseph L. Kosky, Esq.
> Ass't U.S. Attorney
> 8000 World Trade Center
> 101 W. Main St.
> Norfolk, VA  23510

joseph.kosky@usdoj.gov

and with a copy by email and mail to the following non-ECF user:

>Leah D. Greathouse
>U.S. Probation Officer
>600 Granby St.
>Norfolk, VA 23510
>Leah_Greathouse@vaep.uscourts.gov

>/s/
>James R. Theuer (VSB #68712)
>Attorney for Defendant Ronald Miltier
>JAMES R. THEUER, PLLC
>555 E. Main St., Suite 1212
>Norfolk, VA 23510
>Tel: (757) 446-8047
>Fax: (757) 446-8048
>jim@theuerlaw.com