

FILED
NOV 17 2016
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# NORFOLK DIVISION

**UNITED STATES OF AMERICA,**

v.

**RONALD MILTIER,**

**Defendant.**

CRIMINAL NO. 2:15cr151

## MEMORANDUM OPINION

This matter comes before the Court upon the Government's request for an Order of Restitution against Defendant Ronald Miltier ("Defendant") pursuant to 18 U.S.C. § 2259. ECF No. 60. See also ECF Nos. 59, 67.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On March 24, 2016, Defendant was named in an eight-count Superseding Indictment charging him with: (1) Receipt Of Child Pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A), 2256(1), 2256(2), 2256(8)(A) and 2 (Counts One through Seven); and (2) Possession of Child Pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2256(1), 2256(2), and 2256(8)(A) (Count Eight). Superseding Ind., ECF No. 17.

Defendant's trial on the charges alleged in the Superseding Indictment began on July 12, 2016. On July 15, 2016, the Jury returned a verdict which found Defendant guilty of : (1) Counts One through Seven, Receipt Of Child Pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A), 2256(1), 2256(2), 2256(8)(A) and 2; and (2) Count Eight, Possession of Child Pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2256(1), 2256(2), and 2256(8)(A). ECF No. 42.

On October 24, 2016, this Court sentenced Defendant to 120 months each for Counts One

through Seven, to be served concurrently, and twenty-two months for Count Eight, also to be served concurrently; supervised release was set for life. ECF No. 63.

Government sought restitution for the victim "Vicky" in the amount of $10,000. ECF No. 60. Government asserts that Defendant possessed at least one video file of Vicky. ECF No. 67, at 11, Gov't Restitution Hr'g Exs. 12, 13. Defendant objected to the request, ECF Nos. 61, 65. Vicky also submitted a letter from her attorney, Carol Hepburn, outlining the alleged damages suffered, as well as victim impact statements from herself, her mother, and her stepfather. ECF No. 59-1. At the request of both parties, this Court reserved ruling on the issue of restitution pending a separate hearing. ECF No. 62. This Court held a restitution hearing on November 7, 2016. ECF No. 70

When Vicky was a child, her biological father subjected her to sexual abuse, including vaginal and anal intercourse; oral sex; and bondage. He then produced videos and images of this abuse; these images and videos are widely circulated across the Internet. United States v. McIntosh, 2014 WL 5422215, at *1 (E.D. Va. Oct. 22, 2014) (citing United States v. Hicks, 2009 WL 4110260, at *1 (E.D. Va. Nov. 24, 2009)). See also Victim's Impact Statement – Step-Father of Victim Vicky Series, ECF No. 59-1, at 30.

According to the documents submitted by Vicky's lawyer, Ms. Hepburn, Vicky's estimated losses total $1,195,947.96. This includes: (1) $113,600 in future counseling expenses; (2) $53,300 in educational and vocational counseling needs and lost part-time income during schooling; (3) $936,646 in lost past and future earnings; and (4) $92,371.96 in expenses incurred relative to restitution documentation (not including attorney's fees). ECF No. 59-1, at 2. As of Ms. Hepburn's October 12, 2016 letter, Vicky has received $858,093.85 from 830 orders of restitution. Id. Thus, Vicky still seeks $337,854.11. As noted, she requested $10,000 from

2

Defendant. ECF No. 60.

## II. MOTION FOR RESTITUTION

### A. STANDARD

#### 1. Mandatory Restitution for Sexual Exploitation of Children Act

The Mandatory Restitution for Sexual Exploitation of Children Act ("MRSECA"), 18 U.S.C. § 2259, requires that courts issue restitution orders to victims of child pornography crimes (restitution is "mandatory," 18 U.S.C. § 2259(b)(4)). Courts must direct the defendant to pay the victim "the full amount of the victim's losses as determined by the court," § 2259(b)(1), which includes any costs incurred for:

> (A) medical services relating to physical, psychiatric, or psychological care;
> (B) physical and occupational therapy or rehabilitation;
> (C) necessary transportation, temporary housing, and child care expenses;
> (D) lost income;
> (E) attorneys' fees, as well as other costs incurred; and
> (F) any other losses suffered by the victim as a proximate result of the offense.

A court may not decline to issue an order because of "the economic circumstances of the defendant" or "the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source." 18 U.S.C. § 2259(b)(4).

Restitution is contingent on the Government's ability to prove "the amount of the loss sustained by a victim as a result of the defendant's crime" by a preponderance of the evidence. 18 U.S.C. § 3664(e).

#### 2. Paroline v. United States

In Paroline v. United States, 134 S. Ct. 1710, 1716 (2014), the Supreme Court considered "how to determine the amount of restitution a possessor of child pornography must pay to the victim whose childhood abuse appears in [the] pornographic materials possessed." The Court

3

held that restitution is "proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses." Id. at 1722 (emphasis added). Proximate cause is a "flexible concept" that "generally refers to the basic requirement that . . . there must be some direct relation between the injury asserted and the injurious conduct alleged." Id. at 1719 (internal citations omitted).

    Paroline further noted:

> [W]here it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.

Id. at 1727. Paroline further noted that restitution should be neither "severe" nor "nominal."[1] Id.

    The Supreme Court did not adopt a formula for determining restitution in this type of case, noting "[t]his cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment." Id. at 1728. Instead, Paroline suggested two additional stages of inquiry after a court had (1) established proximate cause: a court should (2) determine "the amount of the victim's losses caused by the continuing traffic in the victim's images," id. at 1728, then (3) weigh several factors in determining the relative causal significance of the defendant's conduct in relation to the victim's total losses. These factors include:

- The number of past criminal defendants found to have contributed to the victim's general losses;
- Reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses;
- Any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted);
- Whether the defendant reproduced or distributed images of the victim;

---

[1] An award that is neither severe nor nominal "serve[s] the twin goals of helping the victim achieve eventual restitution for all her [or his] child-pornography losses and impressing upon offenders the fact that child-pornography crimes, even simple possession, affect real victims." Id.

4

- Whether the defendant had any connection to the initial production of the images;
- How many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

Id. at 1728. See also United States v. Monzel, 2016 WL 5107013, at *1–2 (D.D.C. 2016).

### B. DEFENDANT'S ARGUMENT

Defendant argues that Ms. Hepburn's letter adequately fails to document the basis of the damages suffered by Vicky and therefore fails to establish either (1) Vicky's damages or (2) Defendant's role in causing any damages suffered by Vicky.

In support of his first argument, Defendant argues that the statements submitted from a psychologist, vocational consultant, and economist as to Vicky's need for restitution for psychological counseling, vocational counseling, and past and future lost wages are over two and a half years old. Due to this, Defendant argues they do not account for any significant developments in Vicky's life, such as entry into the job market. As a result, Defendant argues that Government has failed to prove Vicky's damages. Id. at 4–5.

Defendant further argues there was no evidence presented to and found by the jury that Defendant had received an image of "Vicky." Defendant argues that in the absence of such a finding, restitution is not permissible under Apprendi v. New Jersey, 530 U.S. 466 (2000) and Alleyne v. United States, 133 S. Ct. 2151 (2013) (both holding that any fact increasing the penalty for a crime beyond the statutory maximum must be submitted to the jury). However, the Fourth Circuit has recognized that a restitution order by a court does not require a finding by a jury. United States v. Day, 700 F.3d 713, 732 (4th Cir. 2012).

Finally, Defendant argues that even if this Court were to find a restitution award appropriate, McIntosh suggests that—based on a $14,500 restitution award against a defendant who possessed 51 images and 98 videos, resulting in a restitution amount of less than $100 per

file—the Court should also not award restitution in excess of $100 against Defendant for his possession of one Vicky file.[2]

### C. GOVERNMENT'S REPLY

The Government contends the request is supported by sufficient evidence (that is, the assessments of the psychologist, vocational consultant, and economist, as well as statements from Vicky, her mother, and stepfather) to demonstrate both harm to and loss suffered by Vicky through the actions of Defendant. ECF No. 60, at 2. Government contends that the estimates of her losses are reliable because they are based on expert conclusions and represent the most accurate assessment. ECF No. 67, at 13.

Furthermore, Government argues that—as restitution in the amount of $10,000 would represent less than 1% of the total losses suffered ($1,195,947.96)—a restitution award less than that would constitute a trivial award. ECF No. 67, at 12.

### D. ANALYSIS

As Paroline left much of the calculation of restitution up to district courts, courts have wrestled with applying the Paroline framework. See United States v. DiLeo, 58 F. Supp. 3d 239, 243 (E.D.N.Y. 2014). Like other district courts, this Court begins by engaging in the three-step inquiry set forth in Paroline.

    a.    Proximate Cause

The first step in deciding whether to award restitution is to determine the conduct of a defendant and whether the proximate cause requirement is met. See Paroline, 134 S. Ct. at 1720 (noting that the "central concern of the causal inquiry must be the conduct of the particular defendant for whom restitution is sought"). If a defendant's conduct is an offense covered by the

---

[2] It is unclear as to whether Defendant understands that, for the purposes of sentencing, each video is assumed to contain 75 images; therefore, in McIntosh, 98 videos x 75 images = 7,350 images. When adding 51 images, this results in 7,401 images. The rate is $1.96 per image. As Defendant had one Vicky video, according to this calculation, the restitution amount for Defendant under McIntosh would be $1.96 x 75 images = $147.

Act, the Court must then assess the causal relationship between that conduct and the victim's harm. See id. at 1718-20.

In Paroline, the defendant was convicted of knowingly possessing child pornography in violation of 18 U.S.C. § 2252, an offense involving "the sexual exploitation of children and child pornography[.]" Id. at 1718. Defendant was also convicted of receipt of child pornography in violation of a subsection of the same provision, 18 U.S.C. § 2252(A)(a)(2). Thus, the proximate cause requirement is met here for the same reasons it was met in Paroline:

> The unlawful conduct of everyone who reproduces, distributes, or possesses the images of the victim's abuse—including Paroline—plays a part in sustaining and aggravating this tragedy. And there can be no doubt Congress wanted victims to receive restitution for harms like this. The law makes restitution "mandatory," § 2259(b)(4), for child-pornography offenses under Chapter 110, language that indicates Congress' clear intent that victims of child pornography be compensated by the perpetrators who contributed to their anguish. It would undermine this intent to apply the statute in a way that would render it a dead letter in child-pornography prosecutions of this type.
>
> Denying restitution in cases like this would also be at odds with the penological purposes of § 2259's mandatory restitution scheme. In a sense, every viewing of child pornography is a repetition of the victim's abuse. One reason to make restitution mandatory for crimes like this is to impress upon offenders that their conduct produces concrete and devastating harms for real, identifiable victims. It would be inconsistent with this purpose to apply the statute in a way that leaves offenders with the mistaken impression that child-pornography possession (at least where the images are in wide circulation) is a victimless crime.

Id. at 1726-27 (citation omitted). The Fourth Circuit has also applied this reasoning: "It is well established that children featured in child pornography are harmed by the continuing dissemination and possession of that pornography. Such images are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." United States v. Burgess, 684 F.3d 445, 459 (4th Cir. 2012) cert, denied, 133 S. Ct. 490 (U.S. 2012) (internal quotation marks omitted).

As Defendant possessed Vicky's images, he played a part in the continuing possession of

child pornography featuring Vicky, and thus a part in sustaining and exacerbating her injury. Accordingly, this Court finds that Defendant was a proximate cause of Vicky's harm.

      b.    Amount of Victim's Losses Caused by the Continuing Traffic in the Victim's Images

The second step in a Paroline analysis is to determine the amount of the victim's losses caused by the continuing traffic in the victim's images. Though it is "not possible" for the Government to demonstrate the amount of losses caused by the continuing trafficking of Vicky's images, United States v. Reynolds, 2014 WL 4187936, at *6 (E.D. Mich. Aug. 22, 2014), this Court has reviewed the documentation from Ms. Hepburn concerning Vicky's full economic losses and finds that the losses asserted by Vicky are adequately documented and supported. As noted, Vicky states her current damages are $1,195,947.96. This includes: $113,600 in future counseling expenses; $53,300 in educational and vocational counseling needs and lost part-time income during schooling; $936,646 in lost past and future earnings; and $92,371.96 in expenses paid out-of-pocket costs incurred relative to restitution documentation. ECF No. 59-1, at 2.

      c.    Other Paroline Factors

The third step is to consider the other Paroline factors.

      i.    The number of past criminal defendants found to have contributed to victim's general losses

In McIntosh, this District noted the number of restitution awards Vicky had received—just over 500 in October 2014—and that the certain future increase in the number of awards supported a decrease in Vicky's recovery from the defendant. McIntosh, 2014 WL 5422215, at *11. As of Ms. Hepburn's restitution request, Vicky had received 830 restitution orders. This Court similarly finds that this factor supports a decrease in Vicky's recovery.

      d.    Reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses

This District has previously declined to apply this optional factor because it is "incredibly speculative." McIntosh, 2014 WL 5422215, at *11. This Court also declines to apply this factor. ECF No. 67, at 6.

  e. Any available and reasonably reliable estimate of the broader number of offenders involved

For the reason stated above, this Court also declines to apply this factor.

  f. Whether Defendant reproduced or distributed images of Vicky

The Government conceded at sentencing that Defendant did not reproduce or distribute images of Vicky. ECF No. 66, at 8. See also ECF No. 67, at 8. Thus, the restitution award should not be increased based on this factor. See also McIntosh, 2014 WL 5422215, at *11.

  g. Whether Defendant had any connection to initial production of images

Ms. Hepburn and Government concede Defendant had no connection to production. ECF Nos. 59-1, at 6, 67, at 8. Thus, the Court declines to apply this factor.

  h. Number of images Defendant possessed

Government does not assert Defendant possessed any images of Vicky beyond one video file. For the purposes of sentencing, one video contains 75 images. This is a relatively low number of images, see supra note 2.

  i. Other factors relevant to Defendant's causal role

This District and others have noted that the nature of the images—particularly whether they are sadistic, masochistic, or include other depictions of violence—is an appropriate factor to consider in determining restitution "because the victims will suffer more severe trauma from the continued trafficking of extremely graphic/sadistic images than they would from the trafficking of other images." McIntosh, 2014 WL 5422215, at *12 (quoting Reynolds, 2014 WL 4187936, at *7). Ms. Hepburn's submitted documentation notes the violent quality of the Vicky series. ECF

No. 59-1, at 6–7. Thus, the factor supports an increase in the award.

### E. RESTITUTION AWARD

Like other courts, this Court has attempted to weigh as many of the <u>Paroline</u> factors as possible, and to determine a restitution award based on <u>Paroline</u>'s directive that a restitution amount should be one that "comports with the defendant's relative role in the causal process underlying victim's general losses," 134 S. Ct. at 1715.

In determining a restitution amount, this Court finds the District of Rhode Island's reasoning to be helpful. In <u>United States v. Crisostomi</u>, 2014 WL 3510215, at *3 (D.R.I. July 16, 2014), the District of Rhode Island made the reasonable assumption that the number of restitution awards for Vicky at that time—then, approximately 500—would double to 1000. The court then ordered the defendant to pay 1/1000 (0.1%) of the calculated <u>remaining restitution</u> at that time. <u>Id.</u>

This Court declines to adopt this approach precisely, but finds it useful in determining a restitution award that would comport with Defendant's relative role in the causal process. This Court chooses to calculate restitution as follows. Like the District of Rhode Island, this Court makes the reasonable projection that the future number of offenders will double from the current number of restitution orders—here, as 830 restitution orders have already been entered, the Court assumes at least 830 more restitution orders will be entered in the future.[3] However, given that this Court projects that there will be at least 830 additional restitution orders, the Court declines to calculate a restitution amount at 1/1660 of the remaining restitution amount. Rather, this Court believes it reasonable and comports with Defendant's relative role in the causal process to order Defendant, as one of the 830 additionally liable individuals, to pay for 1/830 (0.120482%) of the

---

[3] At the restitution hearing, FBI Agent David Desy testified that he knew of approximately 1,000 child pornography possession cases per year, of which an estimated 500 contained images of Vicky. Thus, an estimate of at least 830 additional restitution orders in the future seems reasonable.

10

remaining restitution that Vicky is entitled to. Given that Vicky has stated total her losses are $1,195,947.96, and given that she has already received $858,093.95, the remaining restitution amount is $337,854.01. 0.120482% of that amount would be $407.05. This amount is neither trivial or severe, and comports with Defendant's relative role in the causal process. Furthermore, given the balance of additional Paroline factors outlined above, this Court sees no reason for increasing or decreasing this amount.

### III. CONCLUSION

The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Robert G. Doumar
Senior United States District Judge
UNITED STATES DISTRICT JUDGE

Norfolk, VA
November 17, 2016